**Inquiry into the CONDUCT OF the Honorable Gregory G. GALLER.**

No. A11–0149.

Supreme Court of Minnesota.

Nov. 9, 2011.

Douglas A. Kelley, Steven E. Wolter, Kelley, Wolter & Scott, P.A., Minneapolis,

Minnesota, for Board on Judicial Standards.

Thomas J. Weidner, Amanda E. Prutzman, Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Stillwater, Minnesota, for the Honorable Gregory G. Galler.

## OPINION

PER CURIAM.

The Board on Judicial Standards has appealed a hearing panel's dismissal of a formal complaint against the Honorable Gregory G. Galler, a district court judge in the Tenth Judicial District. The Board charged Judge Galler with creating an appearance of impropriety during an omnibus hearing in a DWI case. The Board asserts, among other claims, that Judge Galler ordered a criminal defense attorney to write a letter of apology for allegedly impugning the integrity of a police officer during the attorney's oral argument at the omnibus hearing. Following an evidentiary hearing, the Panel dismissed the complaint against Judge Galler. The Panel found that the Board failed to prove the allegations in its complaint by clear and convincing evidence, including the primary allegation that Judge Galler had ordered the defense attorney to apologize for impugning the integrity of the police officer. The Panel also denied Judge Galler's motion for attorney fees and costs under Minn. R. Civ. P. 11. We affirm the dismissal of the complaint and the denial of attorney fees and costs under Rule 11.

Judge Gregory G. Galler has served as a district court judge in Minnesota's Tenth Judicial District since 2001. Judge Galler's current six-year term expires in January 2015. The primary allegations in this case relate to statements Judge Galler made during an omnibus hearing in a gross misdemeanor DWI case on June 9, 2010. The criminal defense attorney representing the defendant at the hearing challenged the stop of his client's motor vehicle. The attorney believed that the arresting officer had not properly corroborated a tip about a drunk driver before stopping the defendant's vehicle. Toward the end of the hearing, as the attorney was summarizing the defense position, the following exchange took place:

[ATTORNEY]: And in this case, what they had was, we got a report of a drunk driver. Watch out. I mean, the thing speaks for itself, his report. I mean why go back and find it later unless you have got it covered-you know, cover your ass.

[JUDGE GALLER]: Let's be real careful in our language here ..., all right?

Later, at the close of the hearing, the discussion about an apology to the police officer came about. Judge Galler told the attorney:

[JUDGE GALLER]: All right, then before we go off the record, ... you need to send an apology letter to the officer. To suggest on the record that he was covering his ass is not a fair argument and it impugns instead the personal integrity of the officer. So within two days of today send him a letter saying you meant no offense by it—

[ATTORNEY]: I'm sorry.

[JUDGE GALLER]:—which I understand you didn't. And then if you could send me a copy, I'd sure appreciate it, all right?

[ATTORNEY]: I will.

After the hearing, the criminal defense attorney retained an attorney to advise him on how to respond to Judge Galler's directive. The criminal defense attorney did not think he should have to write a letter of apology, but he was concerned

that he might get into trouble if he did not write the letter because Judge Galler had "ordered" him to do so. In a letter dated June 14, 2010, the attorney representing the criminal defense attorney wrote to Judge Galler, requesting "an extension of the date by which [the criminal defense attorney] was ordered to write a letter of apology." Judge Galler reviewed this letter on June 16, 2010, wrote "Okay" on the face of the letter, and put the letter in his out bin. Judge Galler indicated that he did not know "where it went from there."

In addition to retaining an attorney to represent him, the criminal defense attorney told several people what had happened, stating on at least one occasion "that a judge had told [him] to apologize to a cop." One of the people who heard about the incident was an individual who worked in the criminal defense attorney's office. This individual went to yoga with a local newspaper reporter and told the reporter what happened at the hearing. After learning about this incident, the reporter contacted the criminal defense attorney and after talking with the attorney began to write an article about the incident.

On June 16, 2010, the newspaper reporter contacted Judge Galler by telephone and asked if he had ordered a criminal defense attorney to apologize to a police officer. Judge Galler stated that he did not think he had ordered an apology. When the reporter asked if he "might have," Judge Galler responded that he could not recall exactly what words he had used and that it was possible he had done so.

The next day, the reporter's newspaper published an article about the case. The article stated that Judge Galler had ordered a defense attorney to apologize to a police officer for impugning the officer's integrity. Judge Galler first heard about the newspaper article from another judge.

After reading the article, Judge Galler asked his court reporter to prepare a transcript of the omnibus hearing so he could see what he had said. That same day, after printing five or six pages of the relevant part of the transcript, Judge Galler contacted the Executive Secretary of the Board on Judicial Standards and the Director of the Court Information Office for Minnesota's judicial system. According to Judge Galler, he was concerned about the article and that he "wasn't as clear as [he] should have been" at the hearing, and wanted to "clear this up and make it right." Judge Galler also indicated that he contacted the Executive Secretary because he "didn't want to get in trouble with the Board."

Judge Galler maintains that when he spoke with the Executive Secretary on the telephone, he read aloud to the Executive Secretary the relevant parts of the transcript. According to Judge Galler, the Executive Secretary recommended sending a letter to the attorney representing the criminal defense attorney to clear up any misunderstanding about the apology. Both the Executive Secretary and the Court Information Director subsequently reviewed a draft of Judge Galler's letter and suggested some revisions. Judge Galler incorporated most of the suggested revisions into his letter before mailing it to the attorney.

Judge Galler indicated in his letter that he was "attempt[ing] to clarify what appear[ed] to be a number of misunderstandings." Essentially, the letter attempted to clarify that Judge Galler had not actually ordered the criminal defense attorney to send a letter of apology. The letter also attempted to clarify that Judge Galler's concern was with the criminal defense attorney's use of profanity in the courtroom. The letter indicated that Judge Galler knew that the criminal defense attorney

"did not mean to improperly impugn the officer" and that Judge Galler believed that the criminal defense attorney "was just doing his job in advocating for his client."

After Judge Galler's letter became part of the court file, the Court Information Director sent a copy of the letter to the newspaper reporter. The newspaper reporter then published a second article reporting that Judge Galler had sent a letter to the attorney representing the criminal defense attorney denying that he had required an apology. A third article appeared in the newspaper after the newspaper reporter had reviewed a transcript of the omnibus hearing.

By letter dated July 12, 2010, the Board on Judicial Standards notified Judge Galler that it was conducting an investigation into the judge's conduct during the omnibus hearing. The Board noted Judge Galler's possible lack of compliance with several canons of the Code of Judicial Conduct and invited his response. Judge Galler later testified that he was "shocked" when he learned that the Board had started an investigation. Judge Galler explained:

> You know, when you have your so-called baby judge school and [the Board's Executive Secretary] shows up and he says, If you ever have questions, why don't you give us a call, we'll help you through it. In the annual report, it says, Judges, if you ever have a question, give us a call. So I gave him a call, he tells me to write a letter, he approves the letter, and then he investigates me for writing the letter.

Judge Galler responded to the Board by letter dated July 22, 2010. In this letter, Judge Galler acknowledged the criminal defense attorney's right to argue that the police officer was lying and clarified that he had objected to the language used by the attorney. Judge Galler's letter to the Board included the following statement:

> I fully understand a defense attorney's obligation to zealously pursue the client's cause. If the facts provide *any support whatsoever* an attorney may fairly argue that a witness (including a police officer) was, among other things, mistaken, incompetent, corrupt, or lying. However, it is beyond the bounds of fairness and decency for an attorney to use profanity in a legal argument especially when describing a witness.

Judge Galler also indicated in his letter that he did not "order" the criminal defense attorney to send an apology letter. Judge Galler explained that he did not use specific language that he was " 'ordering,' 'requiring,' or 'directing' something to be done," and did not follow up with a written order.

More than six months later, on January 25, 2011, the Board filed a formal complaint against Judge Galler. In preparation for the hearing, the Board's counsel interviewed Judge Galler's court reporter by telephone on February 15, 2011. On March 28, 2011, the court reporter returned to work at the Washington County Courthouse following a vacation. During an initial conversation with the court reporter upon his return to work, Judge Galler showed the court reporter a copy of a written summary of the court reporter's telephone interview with the Board's counsel. Judge Galler told the court reporter that the judge's attorney wanted him "to take a look at [the summary] and see if you agree that it's right or not." The court reporter read the interview summary in Judge Galler's presence. According to Judge Galler, when the reporter was finished, he said something to the effect of, "The last paragraph is right, the rest of it is, basically, all wrong." Judge Galler responded, "I kind of assumed as much. I'll

let [my attorney] know." Judge Galler has acknowledged that when he spoke with his court reporter, he knew that the reporter was a likely witness in the Board's case against the judge.[1]

After learning about Judge Galler's conversation with his court reporter, the Board amended its complaint to add a count charging Judge Galler with improperly discussing the investigation with his court reporter. The amended complaint alleged that Judge Galler violated the Code of Judicial Conduct and the Rules of Board on Judicial Standards by:

Count I: Failing "to act impartially in ordering an attorney to send a written letter of apology to a police officer witness for allegedly impugning the officer's personal integrity," in violation of Canon 1 and Rules 1.1, 1.2 of the Code of Judicial Conduct;[2] Canon 2 and Rules 2.2, 2.8 of the Code of Judicial Conduct;[3] and Rules 4(a)(5) and (6) of the Rules of Board on Judicial Standards (RBJS).[4]

Count II: Making "misleading and inconsistent statements" to a reporter and criminal defense attorney on June 17, 2010, which conflicted with the transcript of the omnibus hearing, in violation of Canons 1 and 2, and Rules 1.1, 1.2, and 2.16 of the Code of Judicial Conduct;[5] and Rule 4(a)(5) and (6), RBJS.

Count III: Sending a letter to the Board on July 22, 2010, which "contain[ed] statements that were not candid or honest," in violation of Canon 1, Rules 1.1, 1.2 of the Code of Judicial Conduct, and Rule 4(a)(5) and (6), RBJS.

Count IV: Contacting "a witness in an ongoing disciplinary investigation

---

1. Ultimately, Judge Galler's court reporter did not testify before the Hearing Panel.

2. Canon 1 provides: "A Judge Shall Uphold and Promote the Independence, Integrity, and Impartiality of the Judiciary, and Shall Avoid Impropriety and the Appearance of Impropriety."
   Rule 1.1 provides: "A judge shall comply with the law, including the Code of Judicial Conduct."
   Rule 1.2 provides: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."

3. Canon 2 provides: "A Judge Shall Perform the Duties of Judicial Office Impartially, Competently, and Diligently."
   Rule 2.2 provides: "A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially."
   Rule 2.8 provides, in relevant part: "(A) A judge shall require order and decorum in proceedings before the court. (B) A judge shall be patient, dignified, and courteous to

litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, court staff, court officials, and others subject to the judge's direction and control."

4. Rule 4(a), RBJS, states that the following are grounds for discipline:

   (5) Conduct prejudicial to the administration of justice that brings the judicial office into disrepute, including, but not limited to, discrimination against or harassment of persons on the basis of race, color, creed, religion, national origin, sex, marital status, sexual preference, disability, or age; and
   (6) Conduct that constitutes a violation of the Code of Judicial Conduct or Professional Responsibility.

5. Rule 2.16 of the Code of Judicial Conduct provides: "(A) A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies. (B) A judge shall not retaliate, directly or indirectly, against a person known or suspected to have assisted or cooperated with an investigation of a judge or a lawyer."

into his personal conduct" on March 28, 2011, "for the express purpose of discussing the witness's future testimony," in violation of Canon 1, Rules 1.1, 1.2 of the Code of Judicial Conduct; and Rule 4(a)(5) and (6), RBJS.

(Footnotes added.)

A one-day hearing was held on April 11, 2011, before a three-member hearing panel appointed by the Chief Justice. At the hearing, the Hearing Panel heard testimony from two witnesses called by the Board: the criminal defense attorney and Judge Galler.[6] After presenting this testimony and certain exhibits, the Board rested its case against Judge Galler.

Following the Board's presentation of its case, Judge Galler made a motion for a "directed verdict." Judge Galler argued that the Board had failed to present sufficient evidence to meet the clear-and-convincing-evidence standard that governs judicial discipline proceedings. *See* Rule 11(a), RBJS. The Board opposed the motion. Following a recess, the Hearing Panel's presiding officer announced that the Panel had unanimously concluded that "the evidence presented does not clearly and convincingly establish any violation of the Code of Judicial Conduct as alleged in any of the four counts." By written order filed April 13, 2011, the Panel dismissed the complaint against Judge Galler. In addition, the Panel ruled that it did not have the authority to recommend an award of attorney fees and costs under the Rules of Civil Procedure or Minnesota statutes.

The Board appealed the Hearing Panel's dismissal of the Board's complaint. The Board asserts that the Panel erred in "summarily" dismissing the Board's complaint. Judge Galler filed a cross-appeal, raising the issue of the Panel's authority to award attorney fees and costs under Minn. R. Civ. P. 11. Judge Galler argues that the Board has the authority to award sanctions and requests a remand to the Panel for it to consider awarding Rule 11 sanctions.

## I.

The Board makes two preliminary arguments as to why the Hearing Panel erred when it dismissed the complaint against Judge Galler. As a threshold matter, the Board argues that the Panel erred in granting Judge Galler's motion for a "directed verdict" because motions for a directed verdict "spring from the rules of civil procedure" and are not authorized in judicial discipline actions.[7] *See* Minn. R. Civ. P. 41.02(b) (describing process for dismissing a complaint "[a]fter the plaintiff has completed the presentation of evidence"). The Board also argues that the Panel's "decision to summarily dismiss the Board's complaint midway through the hearing prejudiced the Board and thwarted a full development of the record." According to the Board, "Only by permitting the issues to be fleshed out and argued by the parties could the panel assure the parties and the public that the disciplinary charges were fully and fairly decided."

### Authority to Dismiss

The Rules of Board on Judicial Standards provide that the Board "has the burden of proving by clear and convincing

---

**6.** The Board proposed to offer expert opinion testimony from a different criminal defense attorney. After the proposed expert witness testified as to his background and qualifications, the Panel sustained Judge Galler's objection to his testimony.

**7.** The Board's characterization of Judge Galler's motion as a motion for a "directed verdict" comes from the language used by Judge Galler's attorney at the hearing. The Panel did not use that terminology.

evidence the facts justifying action." Rule 10(b)(2), RBJS. The Rules also provide for dismissal as an appropriate disposition of a complaint, although the Rules do not set forth the procedure for seeking such a dismissal. Rule 11(a) provides that "[i]f the panel finds there is not clear and convincing evidence" that the judge committed misconduct under the grounds for discipline in Rule 4, "the panel shall dismiss the case." Rule 11(a), RBJS. Relying on Rule 11(a), Judge Galler asserts that the Hearing Panel properly dismissed the complaint against him because the Board failed to satisfy its burden of proof. Judge Galler argues that "[t]he Board provide[d] no explanation why the Hearing Panel cannot act on a motion provided for in the Rules of Civil Procedure to reach an outcome explicitly provided by the BJS Rules, when the Board fails to meet its civil burden of proof."

■ We conclude that the Board's argument that the Hearing Panel is not authorized to dismiss a complaint following the Board's presentation of its evidence lacks merit. The Rules of Board on Judicial Standards specifically state that a hearing panel "*shall* dismiss the case" if the panel finds that the Board has not met its burden of proof. Rule 11(a), RBJS (emphasis added). Therefore, a panel has the authority, and even the obligation, to dismiss a case if the Board fails to prove judicial misconduct by clear and convincing evidence. In this case, Judge Galler made the motion to dismiss after the Board had presented all of its witnesses and exhibits and rested its case. Moreover, the Board's argument ignores one of the most fundamental rules of an evidentiary hearing—the party with the burden of proof has the obligation to produce all of the evidence necessary to prove its case. Judge Galler had no obligation to produce witnesses or submit evidence in his de-

fense, much less to prove the Board's case. *See* Rule 10(b), RBJS. Here, the Board has no basis to claim prejudice because it had a full opportunity to present the evidence supporting its complaint. Therefore, we conclude that the Panel had the authority to dismiss the case after the Board rested.

### Standards Governing Hearing Panel's Dismissal

The Board makes an alternative argument that numerous fact issues precluded the Hearing Panel's dismissal of the complaint because the Panel could dismiss the complaint only if this was an "unequivocal case." The Board claims that it presented "significant evidence" showing that Judge Galler's actions created an appearance of impropriety and that his statements to the Board were not candid or honest. Judge Galler responds that the Panel properly dismissed the complaint because the Board "failed to present evidence to rebut Judge Galler's unimpeached testimony."

As an initial matter, the parties dispute the standard that governs the Hearing Panel's dismissal of the complaint and our standard of review. According to the Board, in considering the motion to dismiss, the Panel was required to view the evidence in the light most favorable to the nonmoving party—in this case, the Board. The Board also argues that "panel findings are merely advisory" and that we "should conduct a *de novo* review of the record as a whole and make an independent assessment whether dismissal of the formal complaint was 'just and proper' under the facts of this case." Judge Galler contends that the Board is relying on inapposite authority relating to a judge's authority to take a case away from a jury and argues that we should review the Board's evidence in the light most favorable to the Panel's findings.

■ We first consider the standards that govern a hearing panel's dismissal of a complaint in a judicial discipline matter. We begin by noting that the Board mischaracterizes the Hearing Panel's disposition of the complaint as a "summary dismissal." The Panel dismissed the complaint after the Board had presented all of its witnesses, offered all of its exhibits, and rested its case. Because a hearing panel acts as the fact-finder, *see* Rule 11(a), RBJS, the panel does not view the evidence in the light most favorable to the nonmoving party at this stage of the proceeding. As provided by the Rules of Board on Judicial Standards, a hearing panel "shall making findings of fact and conclusions of law as to whether there is clear and convincing evidence that the judge committed misconduct under the grounds for discipline in Rule 4." Rule 11(a), RBJS; *cf.* 1A David F. Herr & Roger S. Haydock, *Minnesota Practice—Civil Rules Ann.* § 41.21 (5th ed.2010) (explaining that Minn. R. Civ. P. 41.02(b) "permit[s] the trial judge to view plaintiff's evidence in the same light that the judge would view plaintiff's evidence if the defendant rested without submitting any additional proof"). Accordingly, in deciding whether to dismiss a complaint after the Board has rested its case, a hearing panel considers the evidence presented by the Board and decides whether the Board has met its burden of establishing misconduct by clear and convincing evidence.

### Standard of Review

■ We turn next to the standard of review that applies when we review a hearing panel's dismissal of a complaint. When a hearing panel recommends sanctions, the Rules of Board on Judicial Standards provide that we "shall review the record of the proceedings, giving deference to the facts." Rule 14(e), RBJS. Although the Board suggests that a hearing panel's factual findings "engender no deference under Rule 14(e)," when the panel does *not* recommend sanctions, we conclude that there is no reason we would or should defer to the factual findings of the hearing panel in one situation and not the other. Moreover, in *In re Murphy*, 737 N.W.2d 355, 361 (Minn.2007), we noted our sensitivity "to the fact that the panel had the opportunity to view the witnesses as they testified and is therefore in a superior position to assess credibility." *Cf.* Minn. R. Civ. P. 41.02 (stating that when the court dismisses an action after the plaintiff has completed the presentation of evidence, "the court shall make findings as provided in Rule 52.01," which states that in actions tried upon the facts without a jury, the court's findings of fact "shall not be set aside unless clearly erroneous"). In any event, we "independently review[ ] the record and the proceedings and may accept, reject or modify in whole or in part the recommendation" of the panel. *Murphy*, 737 N.W.2d at 361; *see* Rule 14(e), RBJS. Therefore, we review the dismissal of the complaint de novo, but in doing so we give deference to the factual findings of the Hearing Panel.

### Sufficiency of Hearing Panel's Factual Findings

■ Next, the Board argues that the Hearing Panel improperly dismissed the case without making express factual findings. Rule 11, RBJS, provides that "[t]he hearing panel shall make findings of fact and conclusions of law as to whether there is clear and convincing evidence that the judge committed misconduct." The function of the fact-finding panel "is to develop the most complete record possible" for later review by this court. *Murphy*, 737 N.W.2d at 361.

The Hearing Panel's order states, in relevant part:

Recognizing and applying the requisite standard of proof, the panel unanimously finds that the Board has failed to clearly and convincingly prove that:

1. Judge Galler ordered an attorney to send a written letter of apology "to a police officer witness for allegedly impugning the officer's personal integrity . . .," as alleged in Count I of the formal complaint;

2. Judge Galler made misleading and inconsistent statements to a newspaper reporter and to an attorney that conflicted with the transcript of the omnibus hearing out of which the complaint arose, as alleged in Count II of the formal complaint;

3. Judge Galler made statements in a letter he sent to the Board that were "not candid or honest," as alleged in Count III of the formal complaint; and

4. Judge Galler improperly contacted a witness for an ongoing investigation into Judge Galler's conduct "for the express purpose of discussing the witness's future testimony," as alleged in Count IV of the formal complaint.

According to the Board, the Hearing Panel's findings are not sufficient because they "consist of nothing more than [the Panel's] bald conclusion that the Board failed to prove each of its counts by clear and convincing evidence." The Board argues that the Panel's findings do not "reveal the legal basis for the panel's decision and offer no insight as to its reasoning." Judge Galler responds that the Panel's findings fully complied with Rule 11(a), RBJS, which requires a hearing panel to "make findings of fact and conclusions of law as to whether there is clear and convincing evidence that the judge committed misconduct." According to Judge Galler, "the Hearing Panel tailored its decision to the exact requirements of the rule." He asserts that the order "contains specific findings of fact on each of the allegations exactly as alleged in the [Board's] Formal Complaint and exactly as BJS Rule 11(a) requires."

We conclude that the Hearing Panel's findings, while not extensive, are express and do comply with the minimum requirements of Rule 11(a), RBJS. The Board attempts to characterize the Panel's findings as legal conclusions, but the Panel's findings do in fact relate to factual matters. For example, the Board maintains that the Panel "made no finding" on the "central issue" in this case: "whether Judge Galler ordered a defense lawyer to apologize to [a] police officer for impugning the officer's credibility during a court proceeding." But the Panel expressly found that the Board failed to prove by clear and convincing evidence that "Judge Galler ordered an attorney to send a written letter of apology 'to a police officer witness for allegedly impugning the officer's personal integrity.'" In addition, the Panel made express findings on whether Judge Galler made misleading and inconsistent statements to the newspaper reporter and the attorney representing the criminal defense attorney, whether Judge Galler made statements to the Board that were "not candid or honest," and whether Judge Galler improperly contacted a witness for the purpose of discussing the witness's future testimony.

In essence, the Hearing Panel found that the Board failed to prove by clear and convincing evidence each of the factual allegations stated in the complaint. Moreover, there is no dispute in this case over the words that Judge Galler actually used at the omnibus hearing; rather, the Board's focus has been on what Judge Galler meant by the words he used. Thus,

we conclude that the Panel's findings are sufficient for our review.

### Evidentiary Support for Charges

■ Next, the Board argues that it presented "ample evidence" at the hearing to show that Judge Galler's actions created an appearance of impropriety. The three counts in the original complaint all relate to the specific allegation that Judge Galler "order[ed] an attorney to send a written apology to a police officer witness for allegedly impugning the officer's integrity." Judge Galler stated that he did not actually "order" an apology and that he did not find anything objectionable in the substance of the criminal defense attorney's argument. The only "evidence" the Board offered to refute this testimony was Judge Galler's actual words at the omnibus hearing.

Judge Galler has acknowledged all along that his language at the omnibus hearing was not clear. After the newspaper article appeared, Judge Galler contacted the Board's Executive Secretary, explained the situation, and read aloud the words he actually used from the transcript of the omnibus hearing. The Executive Secretary recommended that Judge Galler write a letter to the attorney representing the criminal defense attorney to clarify that Judge Galler had not actually "ordered" an apology and that he was simply concerned with the mild profanity that the criminal defense attorney had used during the omnibus hearing. Importantly, the Board did not offer any testimony from the Executive Secretary to contradict Judge Galler's account of his telephone conversations with the Executive Secretary, or any other evidence to refute Judge Galler's account of their communications.

■ It is also significant that the Board does not argue that it presented clear and convincing evidence of misconduct in connection with Judge Galler's statements re-garding the letter of apology. Instead, the Board argues that it "presented *significant* evidence showing that Judge Galler created an appearance of impropriety by directing a defense lawyer to apologize to a policeman for calling him a liar." (Emphasis added.) In fact, the Board has acknowledged that there is more than one "fair reading" of what Judge Galler said at the omnibus hearing, but maintains that the evidence "was sufficient to present a fact issue for determination." But, as discussed above, the Board is relying on inapplicable standards when it makes this argument. The Hearing Panel acts as the fact-finder, determining whether the Board proved judicial misconduct "by clear and convincing evidence." Rules 10(b)(2), 11(a), RBJS. "Clear and convincing evidence requires that the truth of the facts asserted be 'highly probable.' " *In re Blakely,* 772 N.W.2d 516, 522 (Minn.2009) (quoting *In re Miera,* 426 N.W.2d 850, 853 (Minn.1988)); *see also Gassler v. State,* 787 N.W.2d 575, 583 (Minn.2010). For all the foregoing reasons, we conclude that the Board did not meet its burden of proof to present clear and convincing evidence of judicial misconduct by Judge Galler. We therefore hold that the Panel did not err when it dismissed the counts of the complaint related to the issue of an apology.

## II.

■ We next consider the Board's allegation that Judge Galler improperly contacted his court reporter "for the express purpose of discussing the witness's future testimony." It appears that the Hearing Panel found that the Board did not prove its factual allegation of improper conduct by clear and convincing evidence. On appeal, the Board argues that Judge Galler's conduct in simply discussing the investigation with his court reporter created an appearance of impropriety. For support,

the Board relies on *In re Murphy*, 737 N.W.2d 355, 362 (Minn.2007), where we held that "[a] judge's contact with a witness in an ongoing disciplinary investigation into his conduct, outside of work hours, outside of the work setting, for the purpose of discussing the investigation, does not promote public confidence in the integrity and impartiality of the judiciary."

Judge Galler has acknowledged that he gave his court reporter a copy of the witness statement prepared by the Board and asked him about it, but claims that this contact was not improper because judges are allowed to have contact with their own witnesses and are not required to have an attorney represent them in judicial discipline investigations. Judge Galler denied, however, that he contacted the court reporter for the express purpose of discussing the reporter's future testimony, as alleged in the complaint. The Hearing Panel found that the Board did not prove this allegation by clear and convincing evidence. Judge Galler contends that the Board cannot shift the basis of its claim on appeal, after the Panel found that the Board failed to prove the allegation in the complaint.

We conclude that fairness dictates that the Board be bound by the specification of charges in its complaint. Nonetheless, we review independently whether Judge Galler's contact with his court reporter constitutes grounds for discipline under an appearance of impropriety theory. We begin by observing that Judge Galler's contact with the court reporter is far different than the judge's contact with the witness in the *Murphy* case. In *Murphy*, the judge called a witness at home for the purpose of discussing the judicial discipline investigation and, according to the witness, told her that they needed to "get [their] stories straight." 737 N.W.2d at 359. Further, the witness in *Murphy* claimed that the judge openly contradicted the witness's version of events during the conversation, *id.* at 362, and appeared to "attempt to foreclose the clerk from testifying otherwise," *id.* at 361. The witness in *Murphy* testified that she was upset about the phone call because she felt the judge was asking her to change her story. *Id.* at 359.

The Board misreads *Murphy* as standing for the proposition that a judge creates an appearance of impropriety simply by discussing judicial misconduct charges with a potential witness. We have not imposed any sort of blanket prohibition on a judge discussing a disciplinary matter with a potential witness. As Judge Galler notes, judges are permitted, but not required, to be represented by counsel during judicial discipline proceedings, *see* Rule 6(g), RBJS, and judges may have a legitimate need to contact potential witnesses for the purpose of preparing a defense.

■■■ But judges may not contact potential witnesses in an attempt to influence their testimony. *Murphy*, 737 N.W.2d at 367 (Anderson, Paul H., J., concurring in part, dissenting in part). In this case, Judge Galler's contact with his court reporter does raise some concerns. According to Judge Galler's own testimony, he asked the court reporter directly— and not through counsel—to take a look at the Board's summary of the witness interview to see whether it was "right or not." The court reporter is a confidential employee of the judge, and in this situation, the court reporter may have felt some inappropriate pressure in responding to Judge Galler's inquiry. A judge must proceed with considerable caution when discussing judicial misconduct charges with a potential witness, particularly an appointed employee who serves at the judge's pleasure. If a judge is represented by counsel, the better practice is for counsel to initiate

contact with a potential witness. A judge who initiates direct contact with a potential witness for the purpose of discussing judicial misconduct charges does so at the risk that his or her questioning may be perceived as an attempt to influence the witness's testimony, and thus, be viewed as improper.

After hearing Judge Galler's testimony, the Hearing Panel found that Judge Galler did not contact the court reporter "for the express purpose of discussing the witness's future testimony," as alleged in the complaint. Giving deference to the Panel's finding and taking into account the Board's failure to present any evidence on this charge other than the testimony of Judge Galler, we conclude that the Board did not meet its burden of proof, and therefore we hold that the Panel did not err in dismissing this count of the complaint.

### III.

In his cross-appeal, Judge Galler argues that the Board erred when it denied his request for attorney fees and costs under Rule 11 of the Minnesota Rules of Civil Procedure. Judge Galler claims that the Board's Executive Secretary filed the complaint without speaking to a single eyewitness and relied only upon the three newspaper articles.[8] According to Judge Galler, the Executive Secretary violated Minn. R. Civ. P. 11 by issuing the formal complaint without conducting a reasonable investigation. Judge Galler argues, "If Rule 11 does not apply to these proceedings, then the Board, or any attorney working for the Board, would have unchecked powers and would not be accountable for their actions." The Board responds that the Hearing Panel correctly refused to impose sanctions.

Under Rule 11, by presenting to the court a pleading, motion, or other argument, the person "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

> (a) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (b) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (c) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Minn. R. Civ. P. 11.02. Rule 11.03 provides for "an appropriate sanction" if "after notice and a reasonable opportunity to respond, the court determines that Rule 11.02 has been violated." Rule 11 sanctions are "limited to what is sufficient to deter repetition of such conduct" and can include monetary sanctions in certain situations. Minn. R. Civ. P. 11.03(b).

In its order dismissing the complaint, the Hearing Panel denied Judge Galler's motion for an award of fees and costs, concluding that:

> Judge Galler has not shown that this panel has the authority to recommend an award of fees and costs under the rules of civil procedure or the Minnesota Statutes, and, further, any award of costs and fees are subject to Minn. R.

---

8. Here, it is important to note that a formal complaint against a judge is filed only after a determination by the majority of the Board that there is reasonable cause to believe the judge committed misconduct.

Bd. Jud. Standards 12, and are not within the purview of this panel's authority.

As relevant here, Rule 12(a)(2), RBJS, provides that:

> Expenses of witnesses shall be borne by the party calling them, unless ... [t]he judge is exonerated of the charges, in which case the Supreme Court may determine that the imposition of costs and expert witness fees would work a financial hardship or injustice and shall then order that those fees be reimbursed.

Further, the Rules of Board on Judicial Standards provide that "[a] judge may be represented by counsel, *at the judge's expense*, at any stage of the proceedings under these rules." Rule 6(g), RBJS (emphasis added).

In appealing the Hearing Panel's conclusion, Judge Galler contends that judicial discipline proceedings are not exempt from the Rules of Civil Procedure, and the Panel had the authority to recommend the imposition of Rule 11 sanctions. Judge Galler asks us to remand this issue to the Panel "to determine if the Board's attorneys brought this matter in violation of Rule 11, and if so, recommend a proper sanction." The Board argues that the Panel correctly rejected Judge Galler's motion for sanctions. The Board contends that a hearing panel has limited authority for awarding costs and expert witness fees in circumstances not present here. *See* Rule 12(a)(2)(ii), RBJS. The Board also asserts that "Rule 11 sanctions are limited to cases involving frivolous or groundless claims," and in this case, the Board initiated these discipline proceedings in good faith.

 We conclude that attorney fees and costs are not available under Minn. R. Civ. P. 11 in judicial discipline proceedings. The Rules of Civil Procedure are intended to "govern the procedure in the district courts of the State of Minnesota in all suits of a civil nature." Minn. R. Civ. P. 1. There is no indication in the Rules of Board on Judicial Standards that Minn. R. Civ. P. 11 applies here. Moreover, even if Minn. R. Civ. P. 11 did apply, Judge Galler has not provided any support for his allegation that the Board initiated the complaint for an improper purpose or without conducting a reasonable investigation. *See* Rule 6, RBJS (setting forth the process for screening, evaluating, and investigating complaints against judges).[9] Accordingly, we hold that the Hearing Panel did not err when it denied Judge Galler's motion for attorney fees and costs under Minn. R. Civ. P. 11.

Affirmed.

---

9. Rule 6, RBJS, provides that the Executive Secretary shall screen and evaluate complaints relating to the conduct of a judge:

> If after screening, the executive secretary determines the complaint raises allegations as to conduct that might constitute grounds for discipline or other action, the executive secretary shall conduct a prompt, discreet and confidential evaluation. The results of all evaluations shall be routinely submitted to the board.

Rule 6(c), RBJS. Rule 6 also provides for Board review of the results of the Executive Secretary's evaluation of a complaint:

> Upon review of the preliminary evaluation, or on its own motion, the board may, by resolution:
> (i) stay proceedings pending action by another agency or court;
> (ii) dismiss the complaint or end the inquiry; or
> (iii) authorize an investigation.

Rule 6(d)(1), RBJS.